UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EL COMITE PARA EL BIENESTAR DE EARLIMART, an unincorporated association; ASSOCIATION OF IRRITATE RESIDENTS, an unincorporated association; COMMUNITY AND CHILDREN'S ADVOCATES AGAINST PESTICIDE POISONING, a California non-profit corporation; WISHTOYO FOUNDATION, a California non-profit corporation; and VENTURA COASTKEEPER, a California non-profit corporation,

        Plaintiffs,

  v.

PAUL HELLIKER, in his official capacity as Director, Department of Pesticide Regulation; TERRY TAMMINEN, in his official capacity as Secretary, California Environmental Protection Agency; CATHERINE WITHERSPOON, in her official capacity as Executive Officer, Air Resources Board; ALAN LLOYD, in his official capacity as Chairman, Air Resources Board; and WILLIAM BURKE, JOSEPH CALHOUN, DORENE D'ADAMO, MARK DESAULNIER, C. HUGH FRIEDMAN, WILLIAM F. FRIEDMAN, MATTHEW McKINNON, BARBARA PATRICK, BARBARA RIORDAN and RON ROBERTS, in their official capacities as members, Air Resources Board,

        Defendants.

NO. CIV. S-04-882 LKK/KJM

O R D E R

Pending before the court in the above-captioned matter is the motion of the defendants for judgment on the pleadings. Resolution of the motion turns upon whether a final regulation published in the Federal Register by the U.S. Environmental Protection Agency ("EPA"), contains a requirement that the State of California adopt certain regulations under specified conditions. One would think that the manner of answering that question was simplicity itself, look at the final regulation and see if it contained the requirement. As will become clear in the course of this opinion, the method of adopting regulations implemented by the EPA frustrates such a commonsense approach.

Before addressing the issue tendered by the motion, I examine the statutory and regulatory background, and then turn to the allegations of the complaint.

### I.

### THE STATUTE AND REGULATORY PROCESS

The Clean Air Act, 42 U.S.C. §§ 7401 et seq., ("The Act"), requires the EPA to promulgate health-based standards for certain pollutants, including hydrocarbons and nitrogen oxides which produce ground level ozone. These standards are called the National Ambient Air Quality Standards (NAAQS). 42 U.S.C. § 7409(a),(b). Each state is required under the Act to adopt a State Implementation Plan (SIP) to satisfy the NAAQS requirements.[1]

---

[1] Identifying the content of any given SIP is made complicated because, as the California Air Resources Board (CARB) explains on its website,

2

1 42 U.S.C. § 7410(a)(1). Specifically, each state is mandated under
2 the Act, to adopt a "plan which provides for implementation,
3 maintenance, and enforcement" of the national ambient air quality
4 standards (NAAQS) and to submit its SIP to the EPA for approval.
5 42 U.S.C. § 7410(a),

6  The EPA is required to determine whether a SIP meets the
7 criteria specified in § 7410 of the Act. A SIP, "once adopted by
8 a state and approved by the EPA, becomes controlling and must be
9 carried out by the state." See <u>Bayview Hunters Point Comty.</u>
10 <u>Advocates</u>, 366 F.3d 692, 695 (9th Cir. 2004)(citing <u>Friends of the</u>

---

 SIPs are not single documents, rather they are a compilation of new and previously submitted plans, programs (such as monitoring, modeling, permitting, etc.), district rules, state regulations, and federal controls . . . ARB forwards SIP revisions to U.S. EPA for approval and publication in the Federal Register. The Code of Federal Regulations Title 40, Chapter I, Part 52, Subpart F, Section 52.220 lists all of the items which are included in the California SIP. There could be hundreds, perhaps thousands of documents which could make up the entire SIP. http://www.arb.ca.gov/planning/sip/sip.htm.

 <u>See also</u> "State Implementation Plans for Air Quality: A Primer," Prepared by the National Association of State Energy Officials (July 1998), pg. 9 ("The SIP includes all elements of a state's air quality management program: plans, commitments, enforceable rules, requirements for new emission sources, monitoring plans, modeling of demonstration and background documentation, letters and attestations, administrative documentation, resources and authority to implement and enforce rules, permit fee requirements and interstate transport requirements."), available at www.naseo.org/committees/energy/documents/sips_for_air_quality_primer.PDF.

 Furthermore, SIPs can be revised when the agencies involved submit new documents for the EPA to approve or disapprove of and may or may not become enforceable federal law. In essence, a SIP is a collection of hundreds, if not thousands of documents, that are constantly changing.

3

Earth v. Carey, 535 F.2d 165, 169 (2nd Cir.1976), cert. denied, 434 U.S. 902). Approved SIPs are enforceable by either the State, the EPA, or via citizen suits brought under Section 304(a) of the Act. Id. (citing Baughman v. Bradford Coal Co., 592 F.2d 215, 217 n. 1 (3d Cir. 1979)); 42 U.S.C. § 7604(a).

The EPA classifies geographic areas in terms of "attainment" or "nonattainment" based on whether they meet the NAAQS for a particular pollutant, such as ozone. 42 U.S.C. § 7407(d). Ozone nonattainment areas are further classified as Marginal, Moderate, Serious, Severe or Extreme, depending on the intensity of the ozone pollution problem.[2] 42 U.S.C. § 7511(a).

**A. ESTABLISHING THE 1990 BASE YEAR INVENTORY AND TRACKING**

One requirement for all nonattainment areas is the establishment of an emissions inventory. The Clean Air Act requires that each state submit a comprehensive inventory of all sources of the relevant pollutant in the nonattainment area. 42 U.S.C. § 7502(c)(3). The inventory sets out the classes and categories of emission sources so that control strategies can be used to address emissions from those sources. In the case of ozone, which is the product of a chemical reaction, the inventory focuses on those sources that emit the ozone-forming pollutants. Nitrogen oxides ("$NO_x$") is such a precursor. Volatile organic

---

[2] Plaintiffs allege that all five air basins or "ozone nonattainment areas" at issue in this case have been designated "severe" or "extreme" for the one-hour and eight-hour ozone NAAQS, except the Southeast Desert and Ventura nonattainment areas which have been designated "moderate" for the eight-hour ozone NAAQS. Compl. at 6.

4

1  compounds ("VOCs") are another ozone precursor. VOCs are found in
2  many products, including pesticides. Since ozone is not a directly
3  emitted pollutant, the inventory for ozone requires the cataloguing
4  of the total amount of actual VOC and $NO_x$ emissions.[3]

**B. ENFORCEABLE CONTROL MEASURES**

Each SIP must include enforceable emission limitations and other control measures necessary to attain the NAAQS, as well as timetables for compliance. 42 U.S.C. § 7410(a)(2)(A). These control measures are "strategies" that the court may enforce. Bayview, 366 F.3d at 701.

**C. "ATTAINMENT DEMONSTRATION" AND "REASONABLE FURTHER PROGRESS DEMONSTRATION"**

States with serious, severe, and extreme ozone nonattainment areas must also demonstrate through an analytical method determined by the EPA, or through another method left to the Administrator's discretion, that these areas will "attain" the NAAQS standard by the applicable date, a requirement called the "attainment demonstration." 42 U.S.C. §§ 7511a(c)(2)(A),(d),(e). The "attainment demonstration" provides the technical verification that all the measures and strategies identified in the inventory are met in order to attain the NAAQS by the applicable date.

////

---

[3] In the case of the pesticide element of the Ozone SIP, because volatile organic compounds (VOCs) react with oxides of nitrogen ($No_x$) in the presence of heat and sunlight to form ozone, the state must monitor the VOCs emitted by each pestice product to determine the inventory, or the catalog of emission sources.

5

Moreover, states with serious, severe, and extreme ozone nonattainment areas must demonstrate "reasonable further progress" (RFP) or "rate of progress" (ROP) toward attainment by showing, on average, a 3% cut in ozone-forming emissions each year after 1996. 42 U.S.C. § 7511a(c)(2)(B)(3% per year VOC reductions each year until attainment); 42 U.S.C. § 7511a(c)(2(C)($NO_x$ reductions allowed in 3% reasonable further progress demonstration); 42 U.S.C. §§ 7511a(c),(d),(e) (reasonable further progress demonstration required in Serious, Severe, and Extreme nonattainment areas). In short, the RFP is the showing that a state will incrementally reduce emissions during the interim period prior to attainment.

Despite these relatively rigid requirements of the Act, states have considerable leeway in selecting the particular methods and programs they will use to achieve compliance with the national standards. See Union Elec. Co. v. EPA, 427 U.S. 246, 266 (1976) ("So long as the national standards are met, the State may select whatever mix of control devices it desires . . . .").

## II.

## THE COMPLAINT

The suit at bar involves a claim in essence brought against various state agencies.[4] Plaintiffs, unincorporated associations

---

[4] Plaintiffs bring suit against the following in their official capacities: Paul Helliker, Director, Department of Pesticide Regulation; Terry Tamminem, Secretary, California Environmental Protection Agency; Catherine Witherspoon, Executive Officer, Air Resources board; Allan Loyd, Chairman, Air Resources Board; and William Burke, Joseph Calhoun, Dorene D'Adama, Mark Desaulnier, C. Hugh Friedman, William F. Friedman, Matthew McKinnon, Barbara Patrick, Barbara Riordan, Ron Roberts, members,

6

and non-profit organizations,[5] bring a citizen suit under § 304(a)(1) of the Act to compel defendants to adopt regulations designed to reduce VOC emissions from pesticide use. They allege such reduction is required by the 1994 California Ozone Implementation Plan propounded by the California Department of Pesticide Regulation ("DPR") and adopted by the EPA.[6] Compl. at 6.

The complaint alleges that on November 15, 1994, the California Air Resources Board ("CARB") submitted an Ozone SIP on behalf of DPR.[7] Compl. at 6. Under the pesticide element of the SIP, plaintiffs allege that California is committed to reducing pesticide-related Volatile Organic Compound emissions, through

////

---

Air Resources Board.

[5] Plaintiffs include El Comite para El Bienestar de Earlimart, Association of Irritated Residents, Community and Children's Advocates Against Pesticide Poisoning, Wishtoyo Foundation, and Ventura CoastKeeper. Pl.'s Compl. at 1.

[6] Chemical products such as pesticides used to treat agricultural land, agricultural crops, and structures for protection from insects, fungus, rodents, and other pests emit VOC. VOCs react with oxides of nitrogen in the presence of heat and sunlight to form ground-level ozone.

Each State SIP contains various elements. California's 1994 Ozone SIP contains four elements - mobile source, consumer products, enhanced motor vehicle inspection, and pesticides. Each of these elements affects the emission rates of ozone.

[7] Plaintiffs allege that the DPR is the state agency obliged to adopt, implement, and enforce the SIP for agricultural and commercial structural pesticides. The Secretary of the California EPA ("CEPA") supervises both the DPR and the CARB. Pl.'s Compl. at 4-5.

voluntary means in five air basins[8] by 20% between 1990 and 2005. Id. at 5-7.  They also allege that the DPR has failed to adopt regulations by June 15, 1997 as required by the "control measure" of the SIP.  They assert that once the U.S. EPA approved the SIP, effective February 7, 1997, the pesticide commitment became an enforceable strategy and the DPR and the CARB were obligated to comply with that strategy.  Id. at 1.

It is undisputed that CARB sent EPA a letter dated May 9, 1995 signed by the DPR director which addressed the Pesticide Element (James W. Wells wrote the letter to James Boyd, the head of CARB). Compl. at 7.  The letter stated that "[t]he Department of Pesticide Regulation commits to adopt and submit to U.S. EPA by June 15, 1997, any regulations necessary to reduce volatile organic compound emissions from agricultural and commercial structural pesticides by specific percentages of the 1990 base year emissions, by specific years, and in specific non attainment areas as listed in the following table."  Id. at 7.

**REDUCTIONS FROM 1990 BASELINE**

| Ozone Nonattainment Area | 1996 | 1999 | 2002 | 2005 |
|---|---|---|---|---|
| Sacramento Metro | 8 % | 12% | 16% | 20% |
| San Joaquin Valley | 8 | 12 | 16 | 20 |

---

[8] The five air basins or "ozone nonattainment areas" at issue in this case are: Sacramento Metro, San Joaquin Valley, South Coast, Southeast Desert, and Ventura. Compl. at 7.

8

| | | | | |
|---|---|---|---|---|
| South Coast | 8 | 12 | 16 | 20 |
| Southeast Desert | 8 | 12 | 16 | 20 |
| Ventura | 8 | 12 | 16 | 20 |

Plaintiffs allege that EPA included the May 9, 1995 commitment in the SIP, approving it as of February 7, 1997. Compl. at 7. They allege that this commitment was incorporated into the final rule adopted by the EPA as a part of California's SIP. Thus, plaintiffs allege, that under the SIP if voluntary controls fail to yield targeted percentage reductions of emissions in 1996, 1999, and 2002, then the DPR must adopt and implement regulations that will achieve the 20% goal by 2005 as described in the table labeled "Reductions from 1990 Pesticide Emissions Baselines." They rely on 61 Fed. Reg. 10920, 10935-10936 (March 18, 1996)(May 9, 1995 letter "is considered part of the SIP"). Compl. at 7.

The Sacramento, San Joaquin Valley, Ventura, and Southeast Desert Nonattainment Area failed to reduce VOC emissions from pesticide use as indicated in the "Reductions from 1990 Pesticide Emissions Baselines" table. Compl. at 8. In 2002, defendants released the California Clean Air Plan, a document that contained control measures designed to reduce pesticide VOC emissions, but these proposed measures were withdrawn from consideration without adoption. Id. Defendants failed to adopt and implement regulations that would achieve the committed control measure reductions in pesticide-related VOC emissions.

9

# III.

## DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants' motion is premised on a contention that the alleged commitment relied upon by the plaintiffs was contained in the proposed regulation but was omitted from the "final rule" approving revisions to the California SIP adopted on January 8, 1997. Accordingly, they maintain that it cannot constitute an "emission standard or limitation" within the meaning of the Clean Air Act.[9]

Defendants assert that the EPA deleted the table in the proposed rule establishing interim reductions from the 1990 pesticide emissions baseline, and substituted a new table entitled "Reductions From Pesticides Measure" which did not include such interim requirements.

The parties' briefs advance convoluted and abstruse arguments, which, in candor, the court has not always felt confident it understood. The fault, however, may not lie so much with the parties, as with method by which the EPA promulgated its final rule.

////

---

[9] Defendants cast this argument as one attacking the court's jurisdiction. It is really beyond cavil that the court has subject matter jurisdiction under the citizen suit provisions of the Clean Air Act. What defendants should be claiming is that because the SIP did not contain the disputed commitment there is no enforceable obligation on the part of the State, and thus plaintiffs fail to state a cause of action. For purposes of this motion, the defendants' mischaracterization of their claim appears to be without significance.

**IV.**

**STANDARDS ON A MOTION FOR JUDGMENT ON THE PLEADINGS**

A motion for judgment on the pleadings may be brought "[a]fter the pleadings are closed but within such time as to not delay the trial." Fed. R. Civ. P. 12(c). All allegations of fact by the party opposing a motion for judgment on the pleadings are accepted as true. Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984). A "dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969)); see also McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a Rule 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Rule 12(b)(6). McGlinchy, 845 F.2d at 810; Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1989). Thus, the motion will be granted only if the movant establishes that "no relief could be granted under any set of facts that could be proven consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Newman v. Universal Pictures, 813 F.2d 1519, 1521-22 (9th Cir. 1987). The court must accept all material allegations of the complaint as true and all doubts must be resolved in the light most favorable to the plaintiff. N.L. Indus., Inc. v. Kaplan, 792 F.2d

896, 898 (9th Cir. 1986).

"If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(c).

## V.

## ANALYSIS

This case is less than pellucid both because the regulatory scheme is complex, and because of the nature of SIPs and the process used by the EPA in adopting them.[10]

Cutting through the unnecessarily abstruse verbiage of the defendants' brief, in essence they contend that plaintiffs' suit cannot lie because the complaint attempts to enforce Rate of Progress (ROP) and Rate of Further Progress (RFP) standards which were not required under the pesticide element of the SIP. Defendants' contention is at least in part based on the final rule's acknowledgment that the table in the final rule entitled "Reduction From Pesticides Measure" "shows reductions counted towards attainment in each area. EPA has revised the table to

---

[10] The idiosyncratic patios adopted by the various agencies, their excessive use of acronyms, and the parties' adoption of that process of articulation doesn't help.  The parties do not appear to be the real culprits.  Given the method of articulation used by the agency (notice the court does not use the term communication), the parties' adoption of the regulatory agencies' words and acronyms appears inevitable.  Indeed, the court finds itself doing the same thing.

12

reflect CEPA's request that emission reductions for interim years be excluded from the SIP, since CARB elects not to assign credit to the pesticide measures except for purposes of attainment." 62 Fed.Reg. 1160 (Jan. 8, 1997). What these mysterious words portend underlies the disagreement between the parties.

It is established that "[c]itizen suits may be brought only to enforce specific measures, strategies or commitments designed to ensure compliance with the NAAQS." Bayview, 366 F.3d at 703 (quoting Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, 12582 (1st Cir. 1996)). Because, in their view, the suit seeks to enforce RFP and ROP, means of testing success, defendants insist that the court is without jurisdiction.[11] What they fail to recognize is that plaintiffs claim the chart specifying a rate of reduction was included in the final SIP and, thus, from plaintiffs' point of view, this is a suit designed to ensure compliance with the NAAQS.

Plaintiffs maintain that the State's commitment or enforceable "control measure," which is to adopt regulations, derives from the May 1995 clarification letter signed by DPR Director James Wells which CARB forwarded to the EPA.[12] As noted, the proposed rule

---

[11] It may be worth noting that plaintiffs' complaint does not mention RFP or ROP. Instead, plaintiffs crafted their complaint as one which "has nothing to do with how California decided to take credit for the reductions from the pesticide measure or whether defendants violated a 'reasonable further progress' demonstration." Pl.'s Opp'n Brief at 11-13 (citing and quoting Compl. at ¶¶ 2-4, 24-39).

[12] As noted above, SIPS are composed of a compilation of new and previously submitted plans, programs (such as monitoring,

13

states that this letter was made part of the SIP.  61 Fed.Reg. 10935 (March 18, 1996).  Plaintiffs cite to the proposed regulation which discusses this rulemaking history as the source of the defendants' commitment to adopt regulations. Id.  Because plaintiffs cite to the proposed regulation, rather than the final regulation, as the source of the enforceable measure, defendants assert that the suit is based on an unenforceable commitment.

Defendants note that the table entitled "Reductions from 1990 Pesticide Emissions Baselines," found in the proposed rule, is not republished in the final rule.  They contend that because the table was not in the Final Rule, "the concomitant to adopt regulations" was also "deleted from the final U.S. EPA-approved California SIP." Mot. at 10-11.  They argue that the Reduction From Pesticides Measure" table was "substituted" in the final regulations for the table plaintiffs rely on.

The table allegedly substituted is defined by the EPA as showing "reductions counted towards attainment in each area."  The comment in the final rule then continues to state that "EPA has

////
////

---

modeling, permitting, etc.), district rules, state regulations, and federal controls.  Apparently, it is not unusual for a revision or letter of clarification to be written by an agency official and forwarded EPA to become part of the SIP.  These letters often clarify the agencies' intent with regard to SIPs. See, e.g., 40 C.F.R. § 52.200(2004)(letter of clarification was submitted by the Arkansas governor regarding Arkansas' pollution control); 40 C.F.R. § 52.780 (2004)(Attorney General of the State of Indiana sent a letter to USEPA clarifying Indiana's interpretation of the definition of "federally enforceable" under the Act).

14

revised the table[13] to reflect CEPA's request that emission reductions for interim years be excluded from the SIP, since CARB elects not to assign credit to the pesticides measures except for purposes of attainment." The statement, while classical bureaucrateze, may be read to suggest that interim reductions premised on the pesticides element has been eliminated from the final rule. It may, however, also be read as no more than an accounting provision, having nothing to do with the need for reductions being satisfied, in part, by the pesticide element. This confusion is compounded by other provisions of the final rule. The language contained in the final rule is similar to that in the 1995 CARB clarification letter. It states,

> As described in the SIP, California has committed to adopt and submit to U.S. EPA by June 15, 1997 any regulations necessary to reduce VOC emissions from agricultural and commercial structural pesticides by 20 percent of the 1990 base year emissions in the attainment years for Sacramento, Ventura, Southeast Desert, and the South Coast, and by 12 percent in 1999 for the San Joaquin Valley.

In the absence of the language noted above, this language seems plain enough to dispose of the issue. It is, of course, true that the final rule does not again set out the relevant table, and does set out a different table. Nonetheless, the final rule does specifically incorporate California's commitment to adopt regulations under the specified circumstances. While hardly plain, it seems more likely than not that this language constitutes the

---

[13] Whether the agency means the table in the proposed rule or the table in the final rule cannot be determined from the comment.

EPA's approval and promulgation of the strategy to implement the regulations committed to by DPR in the 1995 letter. Even if this were not the best reading of the final rule, canons of regulatory construction strongly suggest the court adopt such a conclusion.

As noted above, the Clean Air Act requires that the EPA assure that the SIPs include "enforceable emission limitations, and such other control measures, means or techniques . . . as may be necessary or appropriate to meet the applicable requirements of [the Act]"); 42 U.S.C. § 7502(6), and that a SIP for nonattainment areas include enforceable emission limitations and control measures "as may be necessary or appropriate to provide for attainment of the NAAQS by the applicable attainment date." Id. at § 7506(4). In the absence of the asserted state commitment at issue here, the SIP appears to fail to meet either statutory requirement.[14] The court, however, is obligated to presume that the EPA complied with its statutory duty. "Absent a demonstration to the contrary, we presume [that an administrative agency] follows its statutory commands and internal policies in fulfilling its obligations". Garner v. Jones, 529 U.S. 244, 256 (2000). Put somewhat differently, if the proposed rule required interim reductions from the pesticide emission baselines to achieve attainment in the specified year, and nothing changed as to the need between the time

---

[14] Although the defendants in oral argument contended that other elements of the SIP would assure attainment, they point to nothing that changed between the publishing of the proposed and final rules pertaining to more stringent standards for other elements of the SIP sufficient to make reductions of pesticides VOCs irrelevant.

16

of the publication of the proposed rule and the time of the adoption of the final rule, the court must presume the EPA did its duty and included that element in the final rule.  I thus must assume that the SIP met the EPA's statutory duty, and the commitment to adopt regulations should attainment not be achieved in the interim years, is an enforceable strategy.

At oral argument, the defendants maintained that if a failure to attain occurred by the statutory year, the State would then adopt regulations.  The self-evident problem with that contention is the statute requires enforceable strategies to ensure attainment by the specified years, not a strategy that will come into play only after voluntary means fail to achieve the statutory goal.[15]

To say that the court is less then fully convinced is an understatement.  Nonetheless, given the rigorous standards applicable to defendants' motion, I conclude that defendants' contention that plaintiffs have not pled a cognizable cause of action under the Act is unavailing.

////

////

---

[15]  Finally, I note that the defendants' contention that adopting the construction that the final rule contained the commitment would not be proper because the SIP would then violate state law is not persuasive.  The argument is premised on the notion that only control strategies whose purpose is to meet the requirements of the Clean Air Act may be included in California's SIP.  But that argument begs the question.  If plaintiffs are right, the regulatory commitment of the pesticide element was included for the purpose of achieving attainment; if, on the other hand, defendants are right, the issue never arises, since the commitment to adopt regulations was never made.

17

## VI.
## ORDER

For the foregoing reasons, defendant's motion for judgment on the pleadings is DENIED.

IT IS SO ORDERED.

DATED: April 25, 2005.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT